## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-20089-01-JAR** |
| **CLIFFORD CURRIE,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Clifford Currie's Motion to Exclude (Doc. 52) and Motion for Adverse Inference Instruction (Doc. 53).  The Government has responded to each of Defendant's motions, and the Court held a hearing on July 24, 2017, at which time the Court heard argument from the parties on the motions.  At the hearing, the parties discussed two Federal Bureau of Investigation ("FBI") reports that the Court has reviewed in camera, and the parties also discussed the admissibility of certain video evidence. The Court is now prepared to rule on Defendant's motions and the evidence the parties discussed at the July 24 hearing.  For the reasons explained below, Defendant's motion to exclude is granted in part and denied in part, and Defendant's motion for adverse instruction remains under advisement. The Court finds that the FBI reports are not discoverable and the admissibility of the video evidence remains under advisement.

### I.    Background

On September 8, 2016, Defendant was charged by Criminal Complaint with knowingly assaulting with intent to commit murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 111(a) and 113(a)(1).  Defendant allegedly assaulted Katie Ann Blanchard, his immediate work supervisor, using a flammable accelerant

and straight edge razor blade. Defendant was later indicted on two counts, knowingly and intentionally assaulting Ms. Blanchard with intent to commit murder as described above, and knowingly and intentionally assaulting Deanne Kilian with a dangerous weapon within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(3).

The Court entered Pretrial Order No. 1 ("Pretrial Order") on October 11, 2016. The Pretrial Order instructed the parties to "proceed to immediately comply with all applicable provisions of the Federal Rules of Criminal Procedure."[1] The Pretrial Order also stated that "within a reasonable period after arraignment, and in any event at least 14 days before the [pretrial-motions deadline]," the Government must produce any documents in its possession that are material to the preparation of a defense, any documents the Government intended to use in its case-in-chief, and any reports of physical or mental examinations that would be material to the presentation of a defense.[2] The Court later set the pretrial motions deadline as April 14, 2017.[3]

As to expert discovery, the Pretrial Order stated that "[t]he government must provide the defendant a written summary of testimony the government intends to use under Fed. R. Evid. 702, 703, or 705 during its case in chief at trial, **but only if specifically requested in writing by the defendant**."[4] The Court entered a Trial Order on May 5, 2017, in which it ordered the parties to make expert disclosures by July 5, 2017.[5]

FBI Agent J.C. Bauer served a grand-jury subpoena on Saint Luke's Cushing Hospital ("Saint Luke's") for Defendant's records on September 26, 2016, and Agent Bauer obtained

---

[1]Doc. 20 at 6–8.

[2]*Id.* at 20.

[3]Doc. 33.

[4]Doc. 20 at 11 (emphasis in original).

[5]Doc. 39 at 2.

those records the same day.  The records detail tests that were performed on Defendant

immediately following his arrest on September 7, 2016.  The records include results of alcohol

serum testing, which indicate that Mr. Currie had a certain amount of alcohol in his system at the

time of the alleged offense.  Notably, the results of the alcohol serum testing do not equate to or

indicate Defendant's blood alcohol content.  The records also include incriminating statements

Defendant made to treating physicians.  The Government produced these records to Defendant

on July 13, 2017.  On December 13, 2016, the Government produced to Defendant his medical

discharge records from Saint Luke's, which indicated that Defendant underwent a series of

medical tests, including the alcohol serum screening.  However, these discharge records did not

indicate the results of the alcohol serum testing.

On December 1, 2016, the Government produced to Defendant a two-page report

indicating that explosives testing was performed on various items obtained from the scene of the

offense.  The report explained the results on one item, but explained that results were not

included for the other items because the items were improperly packaged.  The report did not

explain the methodology for the testing.

On April 14, 2016, the Government produced to Defendant a report regarding a forensic

examination of Defendant's phone, work computer, and home computer.  The report contained

all discovery regarding Defendant's phone, including certain Internet searches Defendant made

on the phone.  The report, however, did not contain all discovery relevant to Defendant's work

and home computers.  The Government does not intend to use evidence obtained from

Defendant's work and home computers at trial, but it is unclear whether evidence from these

computers would be material to Defendant's case.  The Government did not provide a full

forensic image of the computers to Defendant, and Defendant has not had the opportunity to view a forensic image of the computers.

On July 17, 2017, the Government produced to Defendant a report regarding DNA testing performed on various items recovered from the scene of the alleged offense. The Government believed this report had been produced with other discovery on April 14, 2017, but it in fact had not been produced.

Also on July 17, 2017, the Government made its expert disclosures to Defendant. These disclosures included identification of three experts as well as summaries of their proposed testimony. The Government explained that its experts include a forensic computer specialist, a forensic chemist, and a forensic biologist. The Government intends to have these experts testify regarding the explosives, computer forensics, and DNA reports described above.

## II.    Motion to Exclude

Defendant moves to exclude the three experts the Government has designated to testify regarding the explosives, computer forensics, and DNA reports. Defendant also moves to exclude incriminating statements he made to medical staff contained in the medical records the Government produced on July 13, 2017. Defendant argues that the Government's deadline to disclose any experts was July 5, 2017, and that the Government failed to meet this deadline by untimely disclosing its experts on July 17, 2017. The Government contends it did not disclose its experts on or before July 5 because it read the Court's Pretrial Order and Trial Order together. The Pretrial Order, tracking the language of Fed. R. Crim. P. 16(a)(1)(G), provides that the government must provide the defendant a written summary of any expert testimony, "**but only if specifically requested in writing by the defendant.**"[6] Thus, the Government interpreted the

---

[6] Doc. 20 at 11 (emphasis in original).

Trial Order as requiring notice of expert disclosure by July 5, but only if Defendant specifically requested such notice.[7]  The Government maintains that although it was not required to disclose experts because Defendant never asked for such disclosure, it made its expert disclosures on July 17 out of an abundance of caution and to prevent any later argument by Defendant that his counsel were ineffective in not asking for such notice.

While the Pretrial Order provided that the Government's duty to disclose *summaries* of its expert witnesses' testimony was triggered only by Defendant requesting such summaries, the Pretrial Order was silent as to the Government's duty to provide *notice* of any expert testimony it may present.  By contrast, the Trial Order explicitly states that "the parties shall make expert disclosures by **July 5, 2017**."[8]  This July 5 deadline is not accompanied by any conditional language, any reference to the deadline in the Pretrial Order for disclosure of expert testimony summaries, or any mention of any obligation by either party to request expert disclosures before the July 5 deadline is triggered.  As the Trial Order plainly reflects, notice of intent to present expert testimony was due July 5, 2017, regardless of any request by either party for such notice, and regardless of the Pretrial Order's provisions regarding summaries of expert testimony.[9]  By disclosing its experts after the July 5 deadline, the Government failed to comply with the Court's Trial Order.

The Court thus turns to the proper remedy for the Government's non-compliance.  The Court has broad discretion in imposing sanctions on a party who fails to comply with a discovery

---

[7]Defendant never requested disclosure of expert witnesses. He maintains such disclosure was unnecessary based on the deadline for expert disclosures set forth in the Trial Order.

[8]Doc. 39 at 2 (emphasis in original).

[9]*Id.*; s*ee United States v. Adams*, No. 14-40005-06-10-DDC, 2017 WL 417263, at *3 (D. Kan. Jan. 31, 2017) (finding that notice of expert testimony was untimely, without any indication that defendant requested such notice); *United States v. Buchanan*, 964 F. Supp. 533, 538–39 (D. Mass. 1997) (excluding expert testimony that was not disclosed until seventeen days before trial, despite government's argument that there is no deadline for notice of expert testimony).

order.[10]  The Court may order the non-complying party to produce the discovery, grant a

continuance, or "prohibit the party from introducing evidence not disclosed."[11]  Generally, "if a

sanction is imposed, it should be the least severe sanction that will accomplish prompt and full

compliance with the court's discovery orders."[12]  In fashioning an appropriate remedy, courts are

instructed to consider:

> (1) the reasons the government delayed producing the requested materials,
> including whether or not the government acted in bad faith when it failed to
> comply with the discovery order; (2) the extent of prejudice to the defendant as a
> result of the government's delay; and (3) the feasibility of curing the prejudice
> with a continuance.[13]

Defendant contends a continuance would not be an appropriate remedy because

Defendant does not want a continuance, and because a continuance would not cure the

Government's non-compliance.  Defendant argues that exclusion is the appropriate remedy

because he has been prejudiced by the late disclosure.  Defendant asserts that after the July 5

deadline passed without expert disclosures by the Government, his counsel proceeded to prepare

for trial with the understanding that there would be no expert testimony.  Based on the

Government's late disclosure, Defendant and his counsel have been forced to significantly adjust

their trial strategy and re-allocate trial preparation resources approximately two weeks from trial.

Defendant also argues the Government acted in bad faith, in that it willfully disregarded the July

5 deadline set forth in the Trial Order simply because Defendant did not request such notice.

The Government argues Defendant has not been prejudiced by the disclosure of expert

testimony, and that Defendant has adequate time to prepare for this testimony at trial.  The

---

[10]*United States v. Wicker*, 848 F.3d 1059, 1060 (10th Cir. 1988).

[11]*Id.* (citing Fed. R. Crim. P. 16(d)(2)).

[12]*United States v. Red Elk*, 185 F. App'x 716, 720 (10th Cir. 2006) (quoting *Wicker*, 848 F.3d at 1060)
(internal quotations omitted).

[13]*Id.* (quoting *Wicker*, 848 F. 3d at 1061).

Government also contends it acted in good faith in disclosing expert testimony on July 17 based on its interpretation of the Pretrial Order and Trial Order.

The Court finds that the Government acted in bad faith in providing untimely notice of its experts on July 17, which was more than a week after the July 5 deadline and approximately two weeks before trial.  In reliance on its misguided interpretation of the Pretrial Order and Trial Order, the Government disregarded the July 5 deadline for disclosure of expert witnesses set forth in the Trial Order.  Although the Government ultimately provided the disclosures out of what it says was an abundance of caution, this shows that the Government believed it had no obligation to disclose notice of expert witnesses at any time before trial.  This interpretation of the Trial Order is unreasonable, especially from experienced Government counsel, and it does not align with case law within this District that has recognized the duty of the Government to timely provide notice of expert witnesses.[14]  The deadline in the Trial Order for expert disclosures is intended to maintain the integrity of the trial schedule and to avoid late disclosures that may jeopardize the trial schedule or disadvantage one party in its trial preparation, as has been the case in this matter.  The deadline for expert disclosures in the Trial Order is simply not reliant on the provision in the Pretrial Order requiring a defendant to request summaries of expert testimony.[15]  Although the Court is not convinced the Government provided untimely notice of expert witnesses to disadvantage Defendant, the Government disregarded the deadline for expert

---

[14]s*ee Adams*, 2017 WL 417263, at *3 (finding that notice of expert testimony provided sixty days before trial was untimely, without any indication that defendant requested such notice).

[15]Government counsel asserted at the July 24 hearing that it has always been her experience that a defendant's request triggers the obligation to provide notice of expert testimony, and that the Court may have intended to do away with that triggering effect by entering the Trial Order in this case.  The Court has used the same Trial Order used in this case (which provides a deadline for expert disclosures by both parties without any mention of a request by the opposing party) in many other criminal cases. *See, e.g.*, *United States v. Olea-Monarez*, Case No. 14-cr-20096-JAR, Doc. 220.  Other Judges in this District have also used similar trial orders, which set forth expert disclosure deadlines without any indication that a request by the opposing party triggers the deadline. *See, e.g.*, *United States v. Countess et. al*, Case No. 16-cr-20097-CM, Doc. 93.  To the extent the Government argues the Trial Order was unique to this case or this Court, the Court is not convinced by this argument.

disclosures on the basis of an unreasonable interpretation of the Trial Order.  The Court finds this conduct demonstrates bad faith.

Having considered the parties' general arguments as to prejudice and bad faith, and having found that the Government acted in bad faith, the Court considers each of the expert disclosures in this case.  Because the degree of prejudice to Defendant varies with each expert, the Court must consider each expert witness separately to properly craft a remedy for the Government's non-compliance.

### A.    Explosives Expert

As explained above, the Government on December 1, 2016 produced to Defendant a two-page lab report prepared by the person the Government later notified it would use as an expert witness.[16]  The report explained what tests were performed and the results for one item, but did not explain the methodology used for the testing.  The Government disclosed the expert and a full summary of his testimony on July 17, 2017.

Defendant had at least some prior notice of the contents of this expert's testimony, as the Government disclosed the lab report on December 1, 2016.  Certainly, this lab report does not equate to notice that the report's author would serve as an expert witness for the Government, and Defendant will likely be prejudiced by the Government's late disclosure of this expert.  But Defendant and his counsel have at least known of the general nature of this expert's testimony for several months, which will undoubtedly help in preparing for cross-examination of the expert at trial.  Additionally, Defendant has not indicated he will be unable to locate and employ a rebuttal explosives expert.  These factors help mitigate the prejudice Defendant will experience as a result of the Government's untimely notice.

---

[16]*See supra* Part I.

The Court is charged with imposing "the least severe sanction that will accomplish prompt and full compliance with the court's discovery orders."[17]  Typically, a continuance is the most desirable remedy for the government's failure to comply with a discovery order.[18]  But Defendant does not seek a continuance, and the Court agrees that a continuance may further prejudice Defendant in that trial would be further delayed.  Here, Defendant argues for exclusion of the expert testimony.  But "this remedy is extreme,"[19] and where several factors mitigate the prejudice to Defendant, as here, the Court finds that exclusion is not warranted.  The Court can also order the non-complying party to produce the discovery in issue, but here notice of the expert witness has already been disclosed.  Accordingly, because the Court finds that the prejudice to Defendant does not justify exclusion of the evidence, and because other available remedies are not appropriate here, the Court denies Defendant's motion to exclude as it relates to the Government's explosives expert.

**B.    Computer Forensics Expert**

The Government produced a forensic examination report of Defendant's phone and two computers to Defendant on April 14, 2016.  This report contained all discovery regarding Defendant's phone, but it did not include all discovery relevant to Defendant's work and home computers.  On July 17, 2017, the Government notified Defendant that the report's author would serve as an expert witness.

At the hearing on July 24, the Government stated that while it seeks to admit the evidence and expert testimony about the forensic examination of Defendant's phone, it does not seek to admit the evidence and expert testimony about the forensic examination of the two computers.

---

[17] *Red Elk*, 185 F. App'x, at 720 (quoting *Wicker*, 848 F.3d at 1060) (internal quotations omitted).

[18] *Wicker*, 848 F.2d at 1062.

[19] *United States v. Brown*, 592 F.3d 1088, 1090 n.4 (10th Cir. 2009).

As with the explosives report, Defendant has had at least some notice of the nature of the computer forensics expert's testimony about the phone.  Although the Government produced the computer forensics report on April 14, 2017, two weeks after the deadline for production of the report, the report contained all discovery concerning Defendant's phone.  Additionally, unlike with the Government's DNA expert, Defendant does not claim that he will be unable to procure rebuttal expert testimony for the Government's computer forensics expert.  Accordingly, the Court finds that the prejudice to Defendant does not justify exclusion of the expert testimony about the phone.  Thus, the Court denies Defendant's motion as it relates to the Government's computer forensics expert's testimony about the phone.

However, the Court grants Defendant's motion as it relates to the Government's computer forensic expert's testimony about the two computers. The Government has stated it does not intend to offer expert testimony about the two computers in its case-in-chief; and the Court finds that because the Government did not provide all discovery concerning the two computers by April 14, and indeed still had not by July 24, the prejudice to Defendant justifies exclusion of the expert testimony about the computers.  Moreover, the Court is concerned that Defendant has not had the opportunity to review the forensic image of the computers that are the subject of the report disclosed on April 14, 2017.  These forensic images may include evidence favorable or material to the defense.  Thus, if Defendant and his counsel perform further investigation of these computers and find that material information is contained therein, the Court may consider additional remedies, including granting of a continuance, for the late disclosure of this evidence.

### C.    DNA Expert

The Government produced a report regarding DNA testing on July 17, 2017, and on the same day notified Defendant that the report's author would serve as an expert witness.  Before this date, Defendant had not received any reports regarding DNA evidence.[20]  Additionally, Defendant asserts he will be unable to find a rebuttal expert to testify regarding the DNA evidence between the time of the Government's disclosure and trial.  Thus, unlike with the explosives and computer forensics experts, Defendant had no notice of the nature of the DNA expert's testimony before July 17, and he will be unable to find a rebuttal expert on this evidence.  The Court therefore finds that the prejudice to Defendant as a result of the Government's late disclosure of its DNA expert justifies exclusion of this expert testimony.  Defendant's motion to exclude is granted as it relates to the Government's DNA expert.

### D.    Defendant's Statements

Defendant also moves to exclude incriminating statements he made to medical staff at the time of his treatment, which are contained in the medical records the Government produced to him on July 13, 2017.  As the Court explained at the July 24 hearing, the deadline for disclosure of these medical records, pursuant to the Pretrial Order, was March 31, 2017.[21]  Defendant argues that the Government's July 13 disclosure of these records was untimely, and therefore they should be excluded.  The Government at the July 24 hearing stated that it would not use

---

[20]The Government asserted at the July 24 hearing that the report it disclosed to Defendant on December 1 that contained a report on explosives testing also indicated certain items had been submitted for DNA testing.  The Government, however, did not assert that this report contained any results regarding DNA testing, and the Government conceded that the DNA report itself was not disclosed until July 17, 2017.

[21]Doc. 20 at 8–9 ("**within a reasonable time period after arraignment, and in any event at least 14 days before the deadline [for pretrial motions] . . .** the government must copy for the defendant or permit the defendant to inspect and copy or photograph: . . . [a]ny results or reports of physical or mental examinations . . . that are in the government's possession . . . and that are material to the presentation of a defense or are intended for use by the government as evidence in chief at the trial.") (emphasis in original); Doc. 33 (setting pretrial motions deadline as April 14, 2017).

these statements at trial, except as rebuttal evidence in the event Defendant testifies.  Defendant

argues the statements should be excluded in all respects, including as rebuttal evidence.  The

Court takes this motion under advisement as it relates to the Government's use of Defendant's

incriminating statements as rebuttal evidence.[22]  The Court otherwise finds the motion moot.

In sum, the Court finds that the prejudice to Defendant caused by the Government's

untimely disclosure of experts does not justify exclusion of the Government's explosives expert

witness, nor its computer forensics expert testimony about the phone.  However, the Court finds

that the Government's late disclosure of DNA reports and notice of its DNA expert, and the

resulting prejudice to Defendant, justify exclusion of the Government's DNA expert witness.

Further, the Government's late disclosure of evidence concerning the home and work computers,

along with late disclosure of the expert and the expert's report, justify exclusion of the computer

forensic expert on the home and work computers.  Accordingly, the Court denies Defendant's

motion to exclude as it relates to the Government's explosives and computer forensics expert

regarding the phone, and grants Defendant's motion to exclude as it relates to the Government's

DNA expert and the computer forensics expert on the two computers.  The Court finds that

exclusion of the DNA expert and the computer forensics expert on the two computers is the least

severe sanction required to ensure the Government's compliance with the Court's discovery

orders.  The Court also finds Defendant's motion to exclude incriminating statements moot, as

the Government has agreed not to use these statements in its case in chief.  To the extent the

Government seeks to admit these statements as rebuttal evidence, the Court will rule on the

admissibility of the statements at trial, out of the hearing of the jury.

---

[22]Prior to any use of these statements by the Government at trial, the Government shall approach the bench to notify the Court of its intention to use these statements, so the Court can rule on their admissibility.

## III.     Motion for Adverse Inference Instruction

Defendant moves for a jury instruction regarding the Government's failure to timely produce the medical records that contain information regarding Defendant's level of intoxication at the time of the offense.  Defendant argues the evidence of his intoxication is material because he may wish to present voluntary intoxication as a defense based on the evidence.  The Tenth Circuit recognizes voluntary intoxication as a defense to crimes requiring proof of specific intent.[23]  The defense applies "if the defendant was so intoxicated that he could not form the specific *mens rea* of the crime charged."[24]

Defendant equates the Government's failure to timely produce the evidence of Defendant's intoxication to spoliation of evidence.  Because of the Government's late production, defense counsel have been unable to secure any experts to testify regarding the intoxication evidence.  Thus, Defendant argues that like in instances of spoliation, here the Government's failure to timely produce the evidence deprives Defendant of the ability to put on the intoxication evidence.

Courts have broad discretion to impose sanctions for spoliation.[25]  These sanctions include dismissal, exclusion of countervailing evidence, or an adverse inference jury instruction regarding the spoliation.[26]  In choosing among available remedies, courts look to (1) the culpability of the party who failed to disclose the evidence, and (2) the degree of resulting prejudice.[27]  As with determining a remedy for violation of a pretrial order, in fashioning a

---

[23]*United States v. Williams*, 403 F.3d 1188, 1194 (10th Cir. 2005) (citing *United States v. Klein*, 13 F.3d 1182, 1183 (8th Cir. 1994)); *United States v. Flynn*, 220 F. App'x 836, 837 (10th Cir. 2007).

[24]*Flynn*, 220 F. App'x at 837.

[25]*Jordan F. Miller Corp v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912 (10th Cir. 1998).

[26]*Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008); *Workman v. AB Electrolux Corp.*, No. 03-4195-JAR, 2005 WL 1896246, at *5 (D. Kan. Aug. 8, 2005) (citation omitted).

[27]*Workman*, 2005 WL 1896246, at *5.

remedy for spoliation, courts should choose the "least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."[28]

Defendant argues that any reasonable prosecutor would have understood that the medical records, which contain evidence of Defendant's intoxication, would be material to preparation of the defense, and thus the Government's conduct was either grossly negligent or intentional. Additionally, Defendant argues the Government's conduct has prejudiced him, as his counsel have been preparing for trial without considering the voluntary intoxication defense. Thus, Defendant argues for a jury instruction that informs the jury that:

> (1) the United States has a solemn obligation to do justice in all cases;
>
> (2) That obligation springs from the United States Constitution, the Federal Rules of Criminal Procedure, and the Court's own orders;
>
> (3) In this case, the prosecution violated the United States Constitution, the Federal Rules of Criminal Procedure, and the Court's orders;
>
> (4) As a consequence of the prosecution's violation, Mr. Currie was not given the chance to prove that he was intoxicated at the time of the alleged offenses;
>
> (5) In order to give Mr. Currie a fair trial despite the prosecution's violations, you must find that Mr. Currie was voluntarily intoxicated at the time of the alleged offense.[29]

The Government argues that to warrant an adverse inference spoliation instruction, a party must submit evidence of intentional destruction or bad faith, rather than mere negligence.[30] Here, the Government maintains, the evidence was not destroyed, but instead was produced to Defendant as soon as it was requested.

---

[28]*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

[29]Doc. 53 at 8. Defendant suggested at the July 24 hearing that he would be open to instructing the jury either that they "must" find or that they "may" find that he was voluntarily intoxicated at the time of the alleged offense.

[30]*See Henning*, 530 F.3d at 1220; *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

An adverse inference instruction is typically given in cases of spoliation, where the evidence at issue is destroyed.  An adverse inference instruction "necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of" destroyed evidence.[31]  The instruction is based on what was "probably contained within the destroyed evidence," and relies "on circumstantial evidence to suggest the contents of the destroyed evidence."[32]

Here, unlike in the context of a typical case involving spoliation, the contents of the medical records are known, but the Government's late disclosure might limit Defendant's effective use of the evidence.  Despite the apparent prejudice to Defendant, the Court is not convinced that instructing the jury to draw a certain finding based on evidence that is available to Defendant is the appropriate remedy.  Indeed, the Court is unaware of any case in which a court has used an adverse inference instruction outside the context of lost or destroyed evidence.  The Court, however, may be willing to consider an instruction regarding the Government's untimely production of the medical records, as Defendant will likely be prejudiced to at least some degree based on his and his counsel's inability to prepare for trial in the same way as if the Government had timely produced the records.  Accordingly, the Court takes this motion under advisement.

The Court also takes under advisement whether to admit the medical records and an instruction on the defense of voluntary intoxication.  If the probative value of the medical records indicating alcohol serum testing results is substantially outweighed by the risk of confusion to the jury or unfair prejudice, the Court will not admit the medical records.[33]  Similarly, unless

---

[31]*Henning*, 530 F.3d at 1220 (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900–01 (8th Cir. 2004)).

[32]*Id.*; § 16:8.The "spoliation inference", Handbk. Fed. Civ. Disc. & Disclosure § 16:8 (4th ed.).

[33]Fed. R. Evid. 403.

Defendant presents evidence at trial that meets the standard for the voluntary intoxication

defense, the Court will not be inclined to give an instruction regarding this defense.[34]

## IV.    Motion for In Camera Review

The parties jointly moved for in camera review of FBI report number 136.  The Court

granted this motion at the July 24 hearing.[35]  The Court has reviewed report number 136, and

finds that it is not discoverable.

Although not included in their motion for in camera review, the parties requested that the

Court also review in camera FBI report number 117.  The Court has reviewed report number

117, and finds that it is not discoverable.

## V.    Video Interview

Defendant also seeks to admit portions of a video that contains an interview of a former

supervisor of Ms. Blanchard and Defendant.  Defendant contends the portions he seeks to admit

contain exculpatory evidence, and that much of the remaining video, which is about an hour in

length, contains irrelevant information.  Defendant suggests that the Government select portions

of the interview it believes are relevant and that the Court play the selected portions of the video

for the jury.  The Government contends that the video is immaterial, but that if any of the video

is played for the jury, it should be played in its entirety.  This matter remains under advisement.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Clifford Currie's

Motion to Exclude (Doc. 52) is **granted in part and denied in part**.  Defendant's motion is

**granted** with regard to the Government's DNA expert and the Government's computer forensics

expert on the home and work computers, and **denied** with regard to the Government's explosives

---

[34]*See, e.g.*, *United States v. Flynn*, 220 F. App'x 836, 837 (10th Cir. 2007) ("We agree with the district court the evidence at trial did not warrant an instruction on voluntary intoxication.").

[35]Doc. 72.

and computer forensics expert on the phone.  Defendant's motion is **moot** as it relates to the Government's use in its case in chief of incriminating statements contained in medical reports the Government produced to Defendant on July 13, 2017.  To the extent the Government seeks to admit these statements as rebuttal evidence, the Court will rule on the admissibility of these statements at trial.

    **IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion for Adverse Instruction (Doc. 53) **remains under advisement**.

    **IT IS FURTHER ORDERED BY THE COURT** that FBI report numbers 136 and 117, which the Court has reviewed in camera, **are not discoverable**.

    **IT IS FURTHER ORDERED BY THE COURT** that the admissibility of video evidence that the parties discussed at the July 24, 2017 hearing **remains under advisement**.

    **IT IS SO ORDERED.**

    Dated: July 26, 2017

                                S/ Julie A. Robinson
                                JULIE A. ROBINSON
                                UNITED STATES DISTRICT JUDGE